# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 19-1959V
### UNPUBLISHED

| | |
|---|---|
| MARVA BECK,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br>Filed: September 25, 2023<br><br>Special Processing Unit (SPU);<br>Entitlement to Compensation; Ruling on the Record; Findings of Fact; Tetanus ("Td"); Shoulder Injury Related to Vaccine Administration (SIRVA); |

*Richard Gage*, Richard Gage, P.C., Cheyenne, WY, for Petitioner.

*Christine Mary Becer*, U.S. Department of Justice, Washington, DC, for Respondent.

## RULING ON ENTITLEMENT[1]

On December 26, 2019, Marva Beck ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by a tetanus-diphtheria ("Td") vaccine administered on January 26, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Relevant Procedural History

More than a year after the claim's initiation, Respondent filed a status report stating that he was willing to engage in settlement discussions, but they did not succeed, and eventually Petitioner was permitted to file a motion for a ruling on the record, doing so on August 15, 2022. Motion for Ruling on the Record ("Mot."), ECF No. 53. Respondent opposed the motion on October 17, 2022, arguing that Petitioner has not established that onset of her injury was within forty-eight hours of her vaccination, and that she had a history of left shoulder pain prior to her vaccination. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 55, at 5-6. Petitioner filed a reply on October 24, 2022. Reply to Respondent's Response to Motion for a Ruling on the Record ("Reply"), ECF No. 56. The matter is ripe for resolution.

## II. Petitioner's Medical Records

Petitioner's past medical history includes reports of shoulder pain that radiated into her neck in June and July of 2017. Ex. 3 at 58-67. She sought care on June 3, 2017, and stated that she thought she may have pulled something due to heavy lifting. *Id.* at 58, 61. She was assessed with muscle spasms in her left trapezius. *Id.* at 62. Petitioner was also in a car accident on January 5, 2018, although her subsequent physical exam was normal. Ex. 2 at 4-9. An MRI showed moderate degeneration in her spine. *Id.* at 21-22.

Petitioner received a Td vaccine in her left shoulder on January 26, 2018, at Summit Medical Group. Ex. 1 at 25-27, Ex. 7. On February 5, 2018, Petitioner saw an orthopedist for left shoulder pain. Ex. 5 at 9-11. Petitioner reported pain for two weeks (which would be close to – or before – vaccination), and rated it as seven-to-ten out of ten. *Id.* at 9. A physical exam indicated grossly limited range of motion. She was diagnosed with bursitis, impingement, and received a cortisone injection. *Id.*

Petitioner returned to her primary care physician three months later, on May 10, 2018, with complaints of left arm pain and decreased range of motion. Ex. 1 at 41-44. She reported that the prior steroid injection helped, but the pain had returned. A physical exam showed decreased range of motion and positive impingement signs. *Id.* at 43. She was diagnosed with tendonitis and received another steroid injection. *Id.* at 43-44. On August 16, 2018, Petitioner reported worsening left shoulder pain. Ex. 1 at 49-52. An examination showed pain with abduction and signs of impingement. *Id.* at 51. She received a second cortisone injection. *Id.* at 51-52.

Petitioner presented to Summit Medical Group on September 25, 2018, due to a mosquito bite. She also "requested to try and order another MRI of her left shoulder from

previous TDAP injection since she has new insurance. She losses R[ange] O[f] M[otion] when the steroid injection wears off. Ex. 1 at 53.

On November 19, 2018, Petitioner presented to the emergency room with complaints of left shoulder pain. Ex. 3 at 160-65. She stated that a tetanus vaccine was administered in April[3] and she had been experiencing pain since that time. *Id.* at 163. X-rays were taken and unremarkable. Ex. 1 at 77. Petitioner followed up with her primary care physician that same day and received another steroid injection. Ex. 1 at 75.

Petitioner underwent a second MRI on November 28, 2018, which showed an infraspinatus tear, tendinopathy, and a SLAP tear. Ex. 1 at 78-79. On December 4, 2018, Petitioner presented to Dr. Larry Waldrop for left shoulder pain since a tetanus shot on January 26, 2018. Ex. 4 at 5. She also reported that her pain had not improved, and cortisone injections provided only temporary relief. *Id.* Petitioner was advised to try physical therapy and return in six weeks. *Id.* at 6.[4]

Petitioner next treated for shoulder pain on January 16, 2019. Ex. 5 at 13. An examination indicated grossly limited range of motion with pain. *Id.* Petitioner was assessed with a complete rotator cuff tear in her left shoulder, rotator cuff tendinitis, and shoulder pain. *Id.* at 15. On February 28, 2019, Petitioner underwent arthroscopic surgical procedures including left rotator cuff repair, left shoulder debridement, and subacromial decompression. *Id.* at 24-25. On March 19, 2019, Petitioner returned to her orthopedist for a post-operative visit. *Id.* at 21-23. She was instructed to continue her physical therapy. *Id.*

Petitioner has submitted an affidavit in support of her claim, dated January 17, 2020. Ex. 6. Therein, she states that she received a tetanus vaccine on January 26, 2018, and that her pain began immediately. *Id.*

### III.   Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the

---

[3] The notation to a tetanus vaccine in April appears to be in error, as there is no record of any vaccine given to Petitioner at that time.

[4] There is no indication that Petitioner participated in any formal physical therapy.

duration and severity of petitioner's injury, and the lack of other award or settlement,[5] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

---

[5] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

Respondent argues that Petitioner reported left shoulder pain in June and July of 2017, and was in a car accident several weeks before her January 26, 2018, Td vaccination. Opp. at 5. But the filed records indicate that neither the prior report of shoulder pain nor the car accident significantly impacted her shoulder. With regard to the 2017 reports of shoulder pain, Petitioner reported that it may have been a strained muscle, and that she was assessed with muscle spasms. Ex. 3 at 58, 61, 62. The car accident also is not explanatory, as her physical exam appeared normal and no reports

of shoulder pain or injury are recorded in association with it. Ex. 2 at 4-9, 21-22. Thus, Petitioner meets this requirement.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first sought treatment approximately ten days after her January 26, 2018 Td vaccination, stating that her shoulder pain started two weeks prior. Ex. 5 at 9. Thereafter, Petitioner continued to treat and consistently linked her shoulder pain to the Td vaccine. *See* Ex. 1 at 53 (record from September 25, 2018, requesting a repeat MRI to address a problem stemming from a "previous TDAP injection"); Ex. 3 at 160-65 (record from November 19, 2018, stating she had pain ever since a tetanus vaccine); Ex. 4 at 5 (record from December 4, 2018 complaining of left shoulder pain since a tetanus shot on January 26, 2018).

Respondent argues that Petitioner's statements are vague and inconsistent, with one instance indicating her pain began just prior to her vaccination, and another in April of 2018. Opp. at 6. Even so, a finding of proper onset can be made based on such a record. Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner consistently linked her shoulder pain to the January 26, 2018 Td vaccine.

Further, the relevant medical records show that Petitioner reported shoulder pain in a relatively timely manner, when measured from the date of vaccination Thus, Petitioner first began to complain of shoulder pain within ten days of the vaccine, and did not attribute her pain to any other injury or cause. It is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. And individuals also often misconstrue the nature of their injury, and therefore fail to inform treaters of all specific facts relevant to onset until later. Here, the added detail of onset did not "wait" for months before being provided, but began to be reported in a reasonable time post-vaccination. And Petitioner affirmatively and repeatedly linked her shoulder pain to the January 26, 2018 Td vaccine.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a Td vaccine intramuscularly on January 26, 2018, in the United States. Ex. 7; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 6; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

**In view of the record, I find preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA, and that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master